**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| WILLIAM A. WHITE, | ) | |
|     Plaintiff, | ) | CASE NO. 7:19CV00531 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. Glen E. Conrad |
|     Defendant. | ) | Senior United States District Judge |

      Plaintiff William A. White, a federal inmate proceeding pro se, has sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(a), 2671–2680. White filed his multi-count, FTCA complaint in the United States District Court for the Southern District of Illinois, the district in which he is currently confined. The factual allegations cover a time period of nearly ten years and describe federal officials' conduct at fifteen prisons, located in ten different judicial districts. Ultimately, United States District Judge J. Phil Gilbert of the Southern District of Illinois dismissed some counts on procedural grounds and denied the United States' motion to dismiss as to other counts about conduct that occurred in his district.[1] Judge Gilbert then transferred Counts 37–38, 41–42, and 47–48 to this court upon finding proper venue here under 28 U.S.C. § 1402(b), given White's residence in the Western District of Virginia before his incarceration. After review of the record, the court concludes that for the convenience of the parties and in the interest of justice, under 28 U.S.C. § 1404(a), White's remaining counts are appropriately severed and transferred to the federal districts where the tortious conduct allegedly occurred.

---

[1] White's FTCA case was referred to a magistrate judge, whose report and recommendation, ECF No. 70, was adopted as supplemented by Judge Gilbert's order over White's objections, ECF No. 72. See White v. United States, No. 3:17-CV-683, 2019 WL 4418579 (S.D. Ill. Apr. 22, 2019), report and recommendation adopted, No. 3:17-CV-00683, 2019 WL 3315563 (S.D. Ill. July 24, 2019).

I.     BACKGROUND

In 2008, White was convicted in this district of witness tampering and making interstate threats with the intent to injure, and was sentenced to thirty months in prison. The United States Court of Appeals for the Fourth Circuit affirmed White's conviction, but remanded the case for resentencing. United States v. White, 670 F.3d 498 (4th Cir. 2012).[2] Thereafter, the court increased White's sentence to thirty-three months. See Case No. 7:08-CR-00054, ECF No. 314 (W.D. Va. Oct. 25, 2012).

Also in 2008, White was tried in the United States District Court for the Northern District of Illinois on a charge of soliciting a crime of violence against a juror. Although an anonymous jury found White guilty of the offense, the district court entered a judgment of acquittal after the verdict. The United States appealed. Ultimately, on October 26, 2012, the United States Court of Appeals for the Seventh Circuit reversed and reinstated the conviction, and the trial court sentenced White to forty-two months in prison. See United States v. White, 698 F.3d 1005, 1017 (7th Cir. 2012) (per curiam), cert. denied, 569 U.S. 913 (April 1, 2013); Case No. 1:08-CR-00851, ECF No. 210 (N.D. Ill. Feb. 20, 2013).

While the appeals in the Virginia and Illinois cases were pending, White was released from custody in April 2011 to serve his period of supervised release on the conviction from this court. Faced with the prospect of soon receiving substantially more prison time, White fled the country, crossing the Mexican border in early May 2012. Mexican Federal Police apprehended White in June 2012, and he was deported back to this district.

---

[2] One of the Fourth Circuit's legal rulings in White's case was later abrogated in part by Elonis v. United States, 575 U.S. 723 (2015), as recognized in United States v. White, 810 F.3d 212, 220 (4th Cir. 2016) ("Elonis abrogates our prior holding that liability under § 875(c) can turn solely on how a recipient would interpret a statement, without regard to whether the speaker intended it as a threat.").

2

Thereafter, White was indicted and convicted in this court on four counts of extortionate communications. In May 2014, the court sentenced him to ninety-two months in prison, to be served consecutively to White's sentence from the Northern District of Illinois, and his appeal was unsuccessful. See United States v. White, 810 F.3d 212 (4th Cir. 2016), cert. denied 136 S. Ct. 1833 (May 2, 2016); Case No. 7:13-CR-00013, ECF No. 199 (W.D. Va. May 6, 2014).

White filed this FTCA action on June 30, 2017, in the Southern District of Illinois. That court provided White with counsel to assist him in amending his unwieldy complaint.[3] White's second amended FTCA complaint ("complaint") alleges, generally, that during his incarceration in federal prison facilities, employees of the Federal Bureau of Prisons ("BOP") and the United States Marshals Service ("USMS") have "subjected [him] to torture through the use of restricted environmental stimuli, isolation, [and] unnecessary use of 'black box' restraints." Compl. ¶ 17, ECF No. 49. The multiple individual claims incorporate the factual detail provided in paragraphs 16–73 of the complaint. The factual allegations indicate that various USMS employees transported White between the facilities. See, e.g., id. at ¶ 57. Judge Gilbert dismissed all claims against the USMS, based on White's failure to complete the exhaustion of administrative remedies before filing this action. Transf. Ord. 3, ECF No. 72. Thus, White's claims concerning conditions during his transport between facilities are not before this court. Judge Gilbert also dismissed as time-barred all claims concerning events that occurred before 2015. Id. at 2.

Pursuant to Judge Gilbert's transfer order, before this court are three counts of intentional infliction of emotional distress ("IIED") and three counts of negligent infliction of emotional distress ("NIED"). Each count covers conduct that allegedly occurred during brief time periods when White was confined in each of the following prison facilities, in the custody and care of BOP

---

[3] The Court expressly held that counsel was appointed only in the Southern District of Illinois case and that counsel's service would not transfer to this court with the severed counts. R&R 20, ECF No. 70.

employees: the United States Penitentiary ("USP") Canaan, in Waymart, Pennsylvania; the Federal Correctional Institution ("FCI") Loretto, in Loretto, Pennsylvania, and the Federal Transfer Center ("FTC") Oklahoma, in Oklahoma City. See Compl. ¶¶ 17, 21–22, 62–66, 508–34, 558–84, and 629–53. For ease of reference, the court has prepared a table displaying the time periods, prisons, and judicial districts relevant to each count.

| Count | Claim | Location & Time Period | Federal District |
|---|---|---|---|
| 37 | IIED | USP Canaan, Dec. 29, 2014 to Jan. 9, 2015 | M.D. Pa. |
| 38 | NIED | USP Canaan, Dec. 29, 2014 to Jan. 9, 2015 | M.D. Pa. |
| 41(a) | IIED | FCI Loretto, Jan. 9 to Feb. 20, 2015 | W.D. Pa. |
| 41(b) | IIED | USP Canaan, Feb. 20 to Mar. 3, 2015 | M.D. Pa. |
| 42(a) | NIED | FCI Loretto, Jan. 9 to Feb. 20, 2015 | W.D. Pa. |
| 42(b) | NIED | USP Canaan, Feb. 20 to Mar. 3, 2015 | M.D. Pa. |
| 47 | IIED | FTC Oklahoma, Apr. 21–30, 2015 | W.D. Okla. |
| 48 | NIED | FTC Oklahoma, Apr. 21–30, 2015 | W.D. Okla. |

White contends that as a result of BOP employees' allegedly intentional and negligent actions, he has suffered emotional distress, mental anguish, post-traumatic stress disorder, personality disorder, physical injury, and extreme pain, with lasting effects.

The United States moves the court to dismiss the case for improper venue in the Western District, or in the alternative, to transfer the case to the federal districts where the alleged torts occurred. White has responded to the United States' arguments, making the matter ripe for disposition.

4

## II. DISCUSSION

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994).[4] The FTCA "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees." Id. Because sovereign immunity is jurisdictional, the terms of the waiver define the court's ability to hear the suit. Id. A plaintiff has an FTCA cause of action against the United States only if he would have a cause of action under state law against a private person under similar circumstances. 28 U.S.C. § 1346(b); Miller v. United States, 932 F.2d 301, 303 (4th Cir. 1991). Accordingly, in an FTCA action, the court must look to the law of the place where the allegedly negligent acts by federal officials occurred. Richards v. United States, 369 U.S. 1, 10 (1962).

Venue for an FTCA claim is governed by 28 U.S.C. § 1402(b), which provides that tort claims against the United States "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." For purposes of venue, a party "is deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). "[A] prisoner's domicile is presumed to be where he was domiciled prior to incarceration." Ownby v. Cohen, 19 F. Supp. 2d 558, 563 (W.D. Va. 1998), aff'd, 194 F.3d 1305 (4th Cir. 1999). "[T]his presumption may be rebutted by an inmate's intention to change domicile." Roberts v. Morchower, No. 91–7688, 1992 WL 42885, at *1 (4th Cir. 1992) (unpublished). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

---

[4] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this opinion, unless otherwise noted.

The Southern District of Illinois found it to be "undisputed" in that court "that [White] was domiciled in the Western District of Virginia because he state[d] in his first amended complaint he resided and engaged in business in Roanoke, Virginia prior to his arrest." R&R 11, ECF No. 70. Thus, the Court found that venue was improper as to White's FTCA claims relating to events outside the Southern District of Illinois, and considered under 28 U.S.C. § 1406(a) whether to dismiss such claims or to transfer them to this district where venue was proper. White argued for dismissal without prejudice so that he could refile the claims in the Western District of Virginia. Judge Gilbert, however, exercised his discretion to transfer the six, non-Illinois counts here instead.

The United States now argues for dismissal of the transferred counts on the ground that venue is improper in this court. The motion asserts that none of the events White raises in these counts occurred within the Western District and that White abandoned his Virginia residency by absconding to Mexico in 2011 with no intention to return. During White's trial in the Western District in 2013, he testified on cross-examination:

> Q    Were you planning to come back to Virginia?
>
> A    No.
>
> Q    How were you going to support yourself?
>
> A    Well, working for various news agencies, some in the United States, some overseas. American money goes a lot further overseas.

United States v. White, No. 7:13CR00013, ECF No. 170, at 38 (W.D. Va. Nov. 1, 2013). The United States argues that White changed his domicile in 2012 when he took up residence in Mexico with the intent never to return to Virginia and asks the court to dismiss the counts for improper venue.

In response to the United States' transfer motion, White denies that he intentionally abandoned his domicile in the Western District of Virginia by leaving for Mexico to avoid

6

additional prison time.  He states that he did not intend to stay in Mexico, that he was only passing through, and that he intends to reside in Virginia when released from prison.  The court cannot find that the evidence currently in the record is sufficient to rebut the presumption that White remains domiciled in the jurisdiction where he resided before his incarceration—the Western District of Virginia.

Moreover, Judge Gilbert has already decided that venue was proper in the Western District so as to permit transfer of the case to this court under 28 U.S.C. § 1406(a).  That decision is now the law of the case.  See L.J. v. Wilbon, 633 F.3d 297, 308 (4th Cir. 2011) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").  Under this doctrine, a court may revise an interlocutory ruling only in very limited circumstances such as when a ruling was the product of "clear error causing manifest injustice."  Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017).  Finding no such circumstance, the court will not revisit the propriety of Judge Gilbert's transfer decision under § 1406(a).[5]

---

[5] White has argued—to Judge Gilbert and to this court—that his ten remaining counts are all allegedly linked by what he now calls the "National Initiative Targeting Bill White"—an alleged conspiracy among federal officials around the country to commit crimes for which White has been framed and to torture him while he is in custody. Resp. 2, ECF No. 82.  White's argument that a conspiracy links his disparate FTCA claims from all over the country is foreclosed here by the law of the case doctrine.  Judge Gilbert concluded:
> [White] argues that all ten remaining counts share a "common core of operative facts," so they accordingly should all be tried together. See Bell v. Taylor, 827 F.3d 699 (7th Cir. 2016) (citing Czarniecki v. City of Chicago, 633 F.3d 545 (7th Cir. 2011)).  The Court disagrees.  These six counts all concern conduct that allegedly occurred in districts far from here, by different individuals at very different times.  It is not clear how these discrete instances are connected at all, barring White's allegations of an overarching conspiracy by the Government.  The Court will accordingly transfer those six counts. . . .

White v. United States, No. 3:17-CV-00683, 2019 WL 3315563, at *2 (S.D. Ill. July 24, 2019).  Judge Gilbert's ruling on this issue is now the law of the case, and the court will not revisit it.  Wilbon, 633 F.3d at 308.  Thus, the court rejects White's argument for transfer of his claims back to the Illinois court.

After careful consideration of the counts now at issue here, the court concludes that for purposes of the convenience of the parties and in the interest of justice, they should be severed and transferred to the districts in which the relevant conduct occurred. A court may, on motion or on its own, sever any claim against a party. Fed. R. Civ. P. 21. Assuming that venue is proper in this district, based on White's prior residence here, "whether to sever the plaintiff's claims and transfer the ones based on alleged [acts or] omissions that occurred in [other judicial districts] is a determination to be made under § 1404(a) and is within the sound discretion of the court." Babb v. United States, No. CV 0:19-487-JFA-PJG, 2019 WL 3731861, at *1–2 (D.S.C. Aug. 8, 2019); Najera v. United States, No. 1:16CV459 (JCC/JFA), 2016 WL 6877069, at *2–3 (E.D. Va. Nov. 22, 2016) ("[A] court has virtually unfettered discretion in determining whether or not severance is appropriate.").

It is undisputed that under § 1402(b), venue over White's FTCA claims would be proper in the districts where the conduct underlying those claims occurred. Moreover, this court has authority to transfer White's claims to those districts, provided that the transfer would be consistent with the purposes set forth in 28 U.S.C. § 1404(a). This section provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). It is well established that a district court has broad discretion under § 1404(a) to grant or deny a motion to transfer to another district where venue would also be proper. Landers v. Dawson Const. Plant, Ltd., Nos. 98–2709, 98–2763, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999) (unpublished) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947) and other cases). In addressing a motion to transfer, courts commonly consider these factors:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the

availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Id.

After reviewing these factors, the court concludes that severing and transferring White's FTCA claims to the courts in the states where the discrete instances of conduct at issue allegedly occurred will best further the interests of justice and the convenience of the parties. Taking this course will allow each district court to look to the law of the state in which it is located to address White's FTCA claims. Further, each claim can then be resolved "at home." Id. Records and potential witnesses will be local, facilitating development of the facts about White's housing classifications, particular prison conditions, and medical or mental health complaints he may have made in the prison facilities where the events occurred. Should the need for a hearing or trial arise, loss of work time and travel expenses for BOP staff witnesses will be minimized, thus conserving valuable government resources.[6] Id. White, as a BOP inmate, is unlikely to bear the travel costs associated with a trial or hearing, should such a proceeding be scheduled.

For the stated reasons, the court concludes that the interests of justice will be best served by severing the claims. Accordingly, the court will grant the United States' motion on different grounds than those raised therein by severing White's claims into three total cases. In this case, the following counts will remain: 37, 38, 41(b) and 42(b), concerning conduct that occurred at USP Canaan, located within the jurisdiction of the Middle District of Pennsylvania. Counts 41(a) and 42(a), concerning conduct that occurred at FCI Loretto, located within the jurisdiction of the Western District of Pennsylvania, will be severed from this case into a separate, new case. Counts 47 and 48, concerning conduct that occurred at FTC Oklahoma, located within the jurisdiction of

---

[6] The court notes that Judge Gilbert denied the United States' motion to dismiss White's FTCA claims concerning events in the Southern District of Illinois, and those claims are proceeding toward trial.

the Western District of Oklahoma, will be severed from this case into a second, separate, new case. An appropriate order will enter herewith.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendant.

**ENTER:** This 10th day of February, 2020.

                                                            Senior United States District Judge